**Opinion filed May 23, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00335-CV

_____

## IN THE INTEREST OF A.W., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 8683-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of A.W.  The mother filed a notice of appeal.  In two issues on appeal, she challenges the sufficiency of the evidence to support the termination of her parental rights.  We affirm.

Termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018).  To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding

was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellant had committed one of the acts listed in Section 161.001(b)(1)—that found in subsection (O). Specifically, the trial court found that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the

child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

In her second issue, Appellant challenges the legal and factual sufficiency of the evidence with respect to the trial court's finding under subsection (O). The record shows that the Department became involved with A.W.'s family when she was twelve years old. At that time, A.W.'s younger sister, A.T., was critically ill and was admitted to the PICU at Cook Children's Medical Center. A.T. had Type 1 diabetes, and the mother was not providing appropriate care for A.T., despite having been instructed on how to do so. Family based safety services were instituted, but concerns about A.T.'s blood sugar continued, as did concerns about A.T. missing school, missing appointments at Cook, and running out of syringes. The next month, A.T. was removed from Appellant's care. At the time of her removal, A.T. tested positive for amphetamine, methamphetamine, and cocaine. After A.T.'s positive drug test, A.W. was also removed from Appellant's care.

The record indicates that a family service plan was prepared and made an order of the trial court. The uncontroverted evidence reflects that Appellant failed to comply with some of the provisions of her service plan. She did not obtain or maintain employment during the eighteen months that this case was pending. And, most notably, Appellant continued to test positive for methamphetamine, including a hair follicle test that was conducted five weeks prior to trial.

Approximately one year after A.W. was removed, but while the case was still pending in the trial court, Appellant was a passenger in a vehicle that was stopped after leaving a known drug location. Appellant had narcotics hidden in her undergarments and was arrested. About two weeks prior to the final hearing on

3

termination, Appellant pleaded guilty to the second-degree felony offense of possession of methamphetamine. Pursuant to a plea bargain agreement, Appellant's ten-year sentence was suspended, and she was placed on community supervision for ten years.

After her arrest, Appellant received inpatient treatment for her admitted drug addiction. Appellant, however, failed to timely sign up for outpatient treatment as required when she was released from inpatient treatment. Additionally, Appellant continued to have various unapproved people in and out of her apartment, including a man named Byron that was living in Appellant's apartment when A.W. and A.T. went there for a Christmas visit. Appellant later admitted that Byron was one of her drug dealers. While this case was pending, police were called to Appellant's address numerous times, and at least one "violent episode" occurred there. The violent episode caused Appellant to go to the "Noah Project."[1]

Appellant testified at trial that she had sought and received treatment for her disease/addiction, that she was no longer doing drugs, and that her sobriety date was May 18, 2018—approximately three and one-half months prior to trial but more than fourteen months after A.W. was removed from Appellant's care. Appellant acknowledged that it took her a long time to admit that she had a drug problem and to seek help for it. She indicated that she was still seeing a counselor and that the appointments with the counselor were helpful. Appellant did not want her parental rights to be terminated.

The Department's goal with respect to A.W. was for her parents' parental rights to be terminated and, ultimately, for A.W. to be adopted. The conservatorship caseworker for the Department believed that, although it would be traumatic at first,

---

[1]We note that the Noah Project is a facility for victims of family violence and sexual assault. http://noahproject.org/.

it would be good for A.W. in the long run for the trial court to terminate Appellant's parental rights. The guardian ad litem expressed great concern over returning A.W. to Appellant.

There was no dispute that A.W. was bonded with Appellant. A few weeks before trial, A.W. indicated that she did not want her mother's parental rights to be terminated but that she wished to be placed in the home of one of her friends. By the time of trial, A.W. and A.T. had been placed in an adoptive home; however, they had only been in that home for thirty days. Therefore, it was not yet known if the foster parents in the adoptive home intended to adopt A.W. and A.T. The foster parents indicated that "they are in it for the long run" and "would not discharge these girls no matter what." The trial judge conferred with A.W. in chambers prior to announcing his decision in this cause. Neither the substance of that conversation nor A.W.'s desire at the time of trial appears in the appellate record.

The record contains clear and convincing evidence to support the trial court's finding under Section 161.001(b)(1)(O). Based on the evidence in this case, the trial court could reasonably have formed a firm belief or conviction that Appellant failed to comply with the provisions of her court-ordered family service plan, which specifically established the actions necessary for her to obtain the return of A.W., a child who had been in the managing conservatorship of the Department for not less than nine months as a result of her removal from Appellant for abuse or neglect. Appellant did not present any evidence that she was unable to comply with certain provisions of her family service plan and had made a good faith effort to comply with those particular provisions. *See* FAM. § 161.001(d). Consequently, we hold that the evidence is sufficient to support the trial court's finding. We overrule Appellant's second issue.

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is

in A.W.'s best interest. Based upon the *Holley* factors and the evidence in the record, as set forth above, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. We acknowledge A.W.'s previously expressed desire that her mother's parental rights not be terminated; however, considering A.W.'s desire to be placed with a friend instead of with Appellant, A.W.'s emotional and physical needs, Appellant's parental abilities, the danger to A.W. if returned to Appellant's care, Appellant's continued use of methamphetamine for well over one year after her children were removed, Appellant's failure to enroll in outpatient drug treatment, Appellant's unstable employment, and the Department's plans for A.W., the trial court could reasonably have formed a firm belief or conviction that it would be in A.W.'s best interest for her mother's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's best interest finding. Accordingly, we overrule Appellant's first issue.

*This Court's Ruling*

We affirm the trial court's order of termination.

JIM R. WRIGHT

SENIOR CHIEF JUSTICE

May 23, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.